2018 IL App (1st) 152994-U

No. 1-15-2994

Opinion filed September 28, 2018

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 2316 |
| | ) | |
| GERMAINE SHAW, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justice Ellis concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

**OPINION**

¶ 1    Defendant Germaine Shaw appeals the trial court's order granting the State's motion to dismiss his postconviction petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). He contends that the trial court erred in dismissing his petition because he made a substantial showing of actual innocence when he presented an affidavit averring that the deceased victim had previously admitted to misidentifying defendant and had named another man as the offender.

¶ 2 The record shows that defendant was charged by information with home invasion and aggravated criminal sexual assault under case No. 00 CR 2316, and home invasion under case No. 00 CR 2317, for offenses involving victim M.J., occurring in Chicago on or about December 22, 1999. Defendant was also charged by indictment with home invasion under case No. 00 CR 1799, for a separate offense involving victim Barbara Dooley, occurring in Hoffman Estates, Illinois, on or about August 4, 1999.

¶ 3 At a pretrial hearing on March 21, 2002, defendant indicated to the court that he had decided to enter a guilty plea. However, after hearing the assistant state's attorney (ASA) recite the factual bases for the offenses, defendant denied committing them and stated he wanted to go trial. The trial court confirmed that defendant did not wish to plead guilty and continued the case for hearing on defendant's motion to suppress statements.

¶ 4 When the case was back on the court call one week later, defendant asked to address the court. Defendant apologized for his "indecisiveness about the decision," and the court told defendant that there was "no need to apologize." Defendant continued:

> "It's just that when [the ASA] began, you know, going over the facts of the case, it kind of freaked me out because I mean they [were] making me sound like a monster, and I assure you [Y]our Honor that I'm no monster. I'm just a person that was dealing with controlled substances. And I really don't even remember the incidents in question. But now all of a sudden I hear that she's dead. My biggest regret is that I never got a chance to apologize to her for the things I may or may not have committed against her. That I place myself on the mercy of the court that you can at least come down to something that's a little bit more reasonable."

¶ 5      The trial court then stated that, for that acts that occurred, the plea offer was reasonable and was as low as it could go. "It's up to you if you wish to do this," the court continued. Defendant agreed to plead guilty and the trial court admonished him that there were "two informations and one indictment" to which he was pleading guilty. The trial court meticulously reviewed the charges for each of the offenses involving both victims, M.J. and Dooley, and defendant confirmed that he was pleading guilty to those offenses. The court then reviewed the possible penalties for the offenses and asked defendant whether, knowing the possible penalties, he still wished to plead guilty. Defendant indicated that he did.

¶ 6      The court then asked defendant if he understood that by pleading guilty, he was giving up his right to plead not guilty and to force the State to prove his guilt beyond a reasonable doubt. Defendant stated that he did. Defendant also acknowledged that he understood the meaning of "a jury trial" and that he was giving up his right to a jury trial. Defendant executed a written jury waiver and agreed that it was his signature on the waiver form. Defendant further acknowledged that he was giving up his rights to "see and hear all [the] State's witnesses testify against [him], *** to have [his] attorney ask questions of those witnesses, *** to present evidence on [his] own behalf including [his] own testimony, or *** [to] remain silent at trial and [his] silence would not be used against [him]." Defendant agreed that he was pleading guilty "of [his] own free will," that "no one [wa]s forcing [him] to plead guilty" and that he was not "under the influence of any drugs or alcohol."

¶ 7      The ASA then recited the factual basis for defendant's plea. For "case [Nos.] 00-CR-2316 and 2317," the factual basis established that, around midnight on December 22, 1999, defendant knocked on the door of the victim, 76-year-old M.J., and indicated he needed to make a phone call. When M.J. allowed him inside, defendant pushed M.J. to the floor and fled from

the residence with her VCR. Shortly thereafter, defendant returned to M.J.'s residence, knocked on the door, and identified himself as a police officer. When M.J. opened the door, defendant forced his way into the residence. Defendant threw M.J. on her bed and rubbed his penis against her vagina in an attempt to penetrate her. After several attempts at penetration, defendant stopped and left the residence with M.J.'s television. M.J. suffered cuts and bruises from the attacks. She identified defendant in a lineup, and defendant later confessed to the police and an ASA and signed a written confession.

¶ 8    For case No. 00 CR 1799, the ASA stated that the evidence would show that defendant pushed his way into the Hoffman Estates home of 48-year-old Barbara Dooley, "held a sharp pronged tool and took Ms. Dooley's car and money from her." Defendant was arrested driving Dooley's car, was identified in a lineup, and gave a handwritten statement.

¶ 9    Defense counsel "agree[d] that would be the testimony," and the trial court accepted defendant's guilty plea. The court sentenced defendant, according to the plea agreement, to 28 years' imprisonment for aggravated criminal sexual assault and 6 years' imprisonment for home invasion against M.J. in case No. 00 CR 2316, to be served consecutively, and to 6 years' imprisonment for each home invasion offense in case Nos. 11 CR 2317 and 00 CR 1799 (against M.J. and Dooley, respectively), to be served concurrently with the sentences in case No. 00 CR 2316.

¶ 10    Defendant did not file a direct appeal and instead filed a *pro se* motion to withdraw his plea three years later in 2005. He argued he was taking psychotropic drugs during the proceedings and that defense counsel was ineffective for failing to request a fitness examination. The trial court denied defendant's motion because it was not filed within 30 days of sentencing.

On appeal from that order, this court granted counsel's motion to withdraw and dismissed the appeal. See *People v. Shaw*, No. 1-05-2073 (Feb. 27, 2006) (order).

¶ 11 On August 7, 2007, defendant filed in the trial court a *pro se* motion to reconsider or reduce his sentence, arguing that his sentence should be reduced because his "DNA was not found in the sexual assault." The court denied his motion to reconsider. On February 1, 2010, defendant filed a section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2010)), asserting that mandatory supervised release (MSR) terms are unconstitutional and his sentence was void because he was not informed of the MSR term. The trial court dismissed his petition.[1]

¶ 12 On February 28, 2013, defendant filed a *pro se* postconviction petition under the Act, arguing that (1) police officers brutalized him until he signed a "false confession," (2) his attorney was ineffective for threatening to withdraw as counsel unless he pleaded guilty, and his plea was therefore involuntary, and (3) newly discovered evidence supported his claim of actual innocence. Specifically, defendant alleged that in February 2013, Andrew Coe informed him that M.J. admitted to Coe that she identified the wrong person as her attacker.

¶ 13 In support of his petition, defendant attached a notarized affidavit from Coe, dated February 19, 2013. Coe averred that, on December 23, 1999, his grandmother's friend, M.J., told him that she had been "assaulted and strong armed of several belongings" by "Anthony Benjamin," whom she previously paid to do work around her house. M.J. told Coe that, after the incident, she was transported to the police department and "coerced to pick some gentlem[a]n

---

[1]Defendant may have filed a second section 2-1401 petition, but the record is unclear on this point. Regardless, that petition is not at issue in the instant case.

out of a lineup that she never saw or knew," and the officers forced her to pick someone that "wasn't the perpetrator." Coe further averred that M.J. "express[ed] grief" for defendant but her family pressured her not to "correct the mistake." Coe intentionally avoided involvement in defendant's case but eventually decided to "come forward" because he felt it was his "duty as a born again Christian to seek justice for both victims." Coe learned defendant's name by sitting in the court hearings on this matter, was "sure" that M.J. would "proudly attest that all the information in [his] affidavit is 100% true if she's called to testify," and asserted that M.J. "is just being pressured by her family not to [testify] so [Coe is] her voice."

¶ 14    Defendant also attached his own notarized affidavit. He averred that, after being arrested on December 22, 1999, two police officers "smacked, punched [him] in the face and kicked [him] in the genitals" and threatened to have him stabbed in Cook County jail if he reported the incident. The officers, whose names he did not remember, instructed him to sign a statement drafted by an ASA, and he signed it because he feared for his life. Defendant further averred that, in March 2002, his attorney threatened to withdraw if he did not plead guilty. She told defendant that he "had no choice or defense and that if [defendant] proceeded to trial that [he] was going to lose."

¶ 15    The trial court advanced defendant's petition and appointed the public defender's office to represent him. On April 16, 2015, the State filed a motion to dismiss, arguing that defendant's postconviction petition was untimely and his actual innocence claim was uncorroborated. The State further argued that defendant's claim regarding police brutality was waived when he pleaded guilty, and he failed to demonstrate ineffective assistance of counsel where his plea was knowing and voluntary.

¶ 16    Following arguments, the court granted the State's motion to dismiss defendant's petition. The court found that defendant's coerced confession claim was untimely under the Act, and in any event, he waived the claim by pleading guilty. Further, the court concluded that defendant's ineffective assistance of counsel claim was also untimely and rebutted by the record, which showed he pled guilty of his own free will. Finally, the court found that defendant failed to make a substantial showing of a constitutional violation based on actual innocence because the newly discovered evidence set forth in his petition was inadmissible hearsay and, therefore, would not change the result of a trial. This appeal followed.

¶ 17    On appeal, defendant does not challenge the trial court's dismissal of his claims relating to his confession and plea due to ineffective assistance of trial counsel. Rather, he contends only that the trial court erred by dismissing his petition where he made a substantial showing of actual innocence by attaching Coe's affidavit, which alleged that M.J. admitted to falsely identifying defendant as the offender.

¶ 18    The Act provides for a three-stage process by which a defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). If the petition is not dismissed within 90 days at the first stage, counsel is appointed and the petition advances to the second stage. *Id.* § 122-2.1(a), (b).

¶ 19    The instant case involves the second stage of postconviction proceedings, during which the dismissal of a petition is warranted only when the allegations in the petition, liberally construed in light of the original trial record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). At this stage, "all well-

pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The defendant "bears the burden of making a substantial showing of a constitutional violation." *Id.* A postconviction proceeding, as a collateral attack on the judgment of conviction, is civil in nature (*People v. Whirl*, 2015 IL App (1st) 111483, ¶ 106 (citing *People v. Johnson*, 191 Ill. 2d 257, 270 (2000))), and the defendant's "burden of proof is *** to show a denial of [a] constitutional right by a preponderance of the evidence' " (*People v. Coleman*, 2013 IL 113307, ¶ 92 (quoting *People v. Stovall*, 47 Ill. 2d 42, 47 (1970))). We review *de novo* the trial court's dismissal of defendant's postconviction petition without an evidentiary hearing. *Pendleton*, 223 Ill. 2d at 473.

¶ 20    To succeed on a claim of actual innocence, a petitioner must present evidence that is (1) newly discovered, (2) material and noncumulative, and (3) of such a conclusive character that it would probably change the result on retrial. *Coleman*, 2013 IL 113307, ¶ 96. Evidence is newly discovered if it was discovered after trial and the defendant could not have discovered it sooner through due diligence. *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009).

¶ 21    Initially, we note that this case presents a unique situation, different from the more typical postconviction petition following a defendant's conviction after a trial. Here, defendant did not have a trial on the charges and instead chose to plead guilty. Accordingly, we do not have a trial record against which to compare defendant's proffered evidence. Moreover, defendant did not plead guilty to a single offense, but he pleaded guilty in a single plea agreement to three charging instruments involving two different victims. However, defendant's proffered evidence in his postconviction petition relates only to the offenses against one victim—M.J.—and he makes no argument regarding his innocence of the offense involving the other victim—Dooley.

¶ 22    Based on the above and following oral argument in this case, this court entered an order directing the parties to file supplemental briefs regarding two issues: (1) the impact, if any, of the fact that defendant pleaded guilty to multiple offenses involving two victims, where his postconviction actual innocence claim relates only to offenses against one of the two victims, and (2) what this court should consider in determining whether proffered evidence meets the test for actual innocence when a defendant makes a postconviction actual innocence claim following a pretrial guilty plea, and accordingly, no trial record or evidence exists.

¶ 23    In defendant's supplemental brief, he contends that this court should review his actual innocence claim regarding M.J., "separate and apart" from the case involving Dooley. In his reply brief, he acknowledges that if he prevails after an evidentiary hearing, his guilty plea in the Dooley case will have to be vacated, and he contends that the court could proceed in any of the following ways: "(1) the parties leave the guilty plea and sentence untouched, or (2) they renegotiate the sentence and, if negotiations fail, (3) [defendant] withdraws his guilty plea and the case is set for trial." The State responds that the stipulated factual bases for the offenses against both victims should be considered in evaluating defendant's actual innocence claim, and that the guilty pleas "must rise and fall together as part of a single, non-severable plea agreement." The State asserts, however, that the fact that he pleaded guilty in the separate case "does not impact this Court's ability to address his claim of actual innocence in the M.J. cases." In reply, defendant argues that the factual basis of the crime against Dooley should not be considered because it is speculative whether such evidence would be admissible at trial, and his involvement in another offense would go to his credibility, which is not an appropriate consideration at the second stage of postconviction proceedings.

¶ 24    Regarding the import of the lack of a trial record due to defendant's guilty plea, defendant asserts that this court should consider the allegations in his petition against the record of his guilty plea, particularly the factual basis offered by the State and the report of proceedings. The State initially contends that this court should not consider defendant's actual innocence claim at all, since it does not involve a claim that his plea was coerced. Alternatively, the State contends that we should look to the entire record, including the factual bases offered by the State for each offense and defendant's confessions, when evaluating his actual innocence claim.

¶ 25    In this case, defendant argued that his plea was involuntary in his petition, but he does not challenge the validity of his plea on appeal. In his brief, he asserts that his petition's claims regarding his confession and plea demonstrate that the record does not rebut his allegation that someone else committed the offenses, but argues only that newly discovered evidence in the form of Coe's affidavit supports an actual innocence claim. Thus, the voluntariness of defendant's plea is not at issue because he abandoned that claim on appeal, and we therefore presume that his plea was valid. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Because defendant failed to challenge the voluntariness of his plea on appeal, he has procedurally forfeited review of this argument, and we thus turn to defendant's actual innocence claim.

¶ 26    However, before evaluating defendant's claim on appeal, this court must carefully distinguish between two forms of actual innocence claims: a gateway claim of actual innocence with an underlying constitutional challenge, and a freestanding claim of actual innocence that is itself the substantive basis for relief.

¶ 27  In the federal system, a habeas petitioner may overcome a procedural bar to habeas review by bringing a gateway claim of actual innocence such that the petitioner may obtain review of the underlying constitutional merits of his or her procedurally defaulted claim. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The United States Supreme Court has defined a petitioner's gateway claim of actual innocence as " 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (quoting *Herrera*, 506 U.S. at 404). The petitioner's claim of actual innocence is not itself a basis for a court to vacate his conviction; rather, the claim of actual innocence depends on the validity of his underlying constitutional claims. See *id.*

¶ 28  In *Schlup*, the United States Supreme Court held that a petitioner asserting a gateway claim must demonstrate that, in light of all the evidence, including the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. This more-likely-than-not standard "ensures that petitioner's case is truly 'extraordinary,' [citation] while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

¶ 29  By contrast, a number of states, including Illinois, acknowledge freestanding claims of actual innocence. See *Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018); *Montoya v. Ulibarri*, 163 P.3d 476, 484 (N.M. 2007) (Holding that the due process clause and the prohibition against infliction of cruel and unusual punishment in the New Mexico Constitution protects actually innocent people, and "to ignore a claim of actual innocence would be fundamentally unfair." Also "[i]t cannot be said that the incarceration of an innocent person advances any goal of

punishment, and if a prisoner is actually innocent of the crime for which he is incarcerated, the punishment is indeed grossly out of proportion to the severity of the crime.").

¶ 30 In *People v. Washington*, 171 Ill. 2d 475, 480 (1996), the Illinois Supreme Court considered a petitioner's freestanding claim of actual innocence following a murder conviction, to determine whether an "Illinois constitutional right is implicated in such a freestanding claim of innocence, since Post-Conviction Hearing Act relief is limited to constitutional claims." Our supreme court acknowledged that the United States Supreme Court found that a freestanding claim of innocence was "not cognizable as a fourteenth amendment due process claim" under the United States Constitution (*id.* at 485), but concluded that the Illinois Constitution required "additional process be afforded in Illinois when newly discovered evidence indicates that a convicted person is actually innocent" "as a matter of both procedural and substantive due process" (*id.* at 487). The supreme court found, "[i]n terms of procedural due process, *** that to ignore such a claim would be fundamentally unfair" and "[i]mprisonment of the innocent would also be so conscience shocking as to trigger operation of substantive due process." *Id.* at 487-88.

¶ 31 The Illinois Supreme Court explained:

> "The [United States] Supreme Court rejected substantive due process as a means to recognize freestanding innocence claims because of the idea that a person convicted in a constitutionally fair trial must be viewed as guilty. That made it impossible for such a person to claim that he, an innocent person, was unfairly convicted.
>
> We think that the Court overlooked that a 'truly persuasive demonstration of innocence' would, in hindsight, undermine the legal construct precluding a substantive due process analysis. The stronger the claim—the more likely it is that

a convicted person is actually innocent—the weaker is the legal construct dictating that the person be viewed as guilty. A 'truly persuasive demonstration of innocence' would effectively reduce the idea to legal fiction." *Id.* at 488.

¶ 32     Despite Illinois generally recognizing freestanding claims of actual innocence, Illinois courts—and indeed, other courts throughout the country—have struggled with whether to recognize, and how to evaluate, such claims of actual innocence after a defendant has pleaded guilty.

¶ 33     Some Illinois courts have expressed doubt as to whether a freestanding actual innocence claim may be brought after a valid and voluntary guilty plea, presuming that in order to proceed on such a claim, a defendant must challenge the knowing and voluntary nature of the plea. See *People v. Barnslater*, 373 Ill. App. 3d 512, 527 (2007) (where a defendant claims his plea was coerced, that coercion constitutes the constitutional deprivation required to obtain postconviction relief; a defendant's claim of actual innocence after a prior admission of guilt does not); *People v. Simmons*, 388 Ill. App. 3d 599, 614 (2009) (noting that courts have "expressed our doubt as to whether a defendant who pleads guilty may even legitimately assert a postconviction claim of 'actual innocence.' "). But see *People v. Knight*, 405 Ill. App. 3d 461, 471-72 (2010) (holding that the "defendant can raise his freestanding claim of actual innocence in postconviction proceedings" and that "[d]efendant's guilty plea does not prohibit him from raising [such a] claim in postconviction proceedings"). No Illinois court, however, has found such claims to be categorically barred, and our supreme court has not yet spoken on this issue.

¶ 34     Some courts in our sister jurisdictions have rejected freestanding claims of actual innocence where a petitioner has pleaded guilty. See, *e.g.*, *Williams v. State*, 2017 Ark. 313, at 4, 530 S.W.3d 844 ("Williams's argument that he is actually innocent of the offense to which he

pleaded guilty does not establish a ground for the writ because it constitutes a direct attack on the judgment."); *Norris v. State*, 896 N.E.2d 1149, 1153 (Ind. 2008) (rejecting an actual innocence claim, noting the difficulty in "harmoniz[ing] th[e] new position taken by the defendant with the fact that he originally admitted to committing the crime by his guilty plea," given that "[b]oth his confession and his new claims cannot be true," and stating that "[a] plea of guilty thus forecloses a post-conviction challenge to the facts adjudicated by the trial court's acceptance of the guilty plea and resulting conviction"); *Woods v. State*, 379 P.3d 1134, 1142 (Kan. Ct. App. 2016) (stating that a claim of actual innocence is "insufficient to override the longstanding rule that a freely and voluntarily entered guilty plea bars a collateral attack on the sufficiency of the evidence"); *Yonga v. State*, 130 A.3d 486, 492 (Md. 2016) (concluding "that a person who has pled guilty may not later avail himself or herself of the relief afforded by the Petition for a Writ of Actual Innocence").

¶ 35    The highest court in New York recently reversed an appellate decision recognizing an actual innocence claim by a defendant who had pleaded guilty, holding that "in the absence of a motion to withdraw the plea or to bring a postconviction motion to vacate the plea as involuntary, the plea and the resulting conviction *** are presumptively voluntary, valid and not otherwise subject to collateral attack." (Internal quotation marks omitted.) *People v. Tiger*, No. 62, 2018 WL 2974466, at *5 (N.Y. June 14, 2018). The court observed that "there are significant public policy reasons for upholding plea agreements, including conserving judicial resources and providing finality in criminal proceedings," before concluding that "[a]llowing a collateral attack on a guilty plea obtained in a judicial proceeding that comported with all of the requisite constitutional protections on the basis of a delayed claim of actual innocence would be

inconsistent with our jurisprudence and would effectively defeat the finality that attends a constitutionally obtained guilty plea." *Id.*

¶ 36 The New York high court also described a state statute added by the state legislature in 2012, which allowed "a specific form of newly discovered evidence—DNA evidence—as a basis to collaterally attack a guilty plea at the postconviction stage." *Id.* at \*4. The court explained that this "narrow exception for new DNA evidence as a basis to vacate a conviction in plea cases" was "undoubtedly due to the recognition of the exceptional nature of DNA evidence as a reliable scientific tool to conclusively determine the identity of an assailant." The court concluded that the legislature did not "contemplate a separate constitutional claim to vacate a guilty plea based on new evidence as to guilt or innocence" and that the legislative purpose was to "adhere to the principle that a voluntary and solemn admission of guilt in a judicial proceeding is not cast aside in a collateral motion for a new factual determination of the evidence of guilt." *Id.*

¶ 37 Courts in other states, however, have permitted freestanding claims of actual innocence, despite a petitioner's guilty plea. These courts have noted that courts should "give great respect to knowing, voluntary, and intelligent pleas of guilty"; however, courts "should not foreclose relief because a defendant pleaded guilty when the policy behind granting relief on a bare innocence claim is the same." *Ex parte Tuley*, 109 S.W.3d 388, 391-93 (Tex. Crim. App. 2002) ("we will not preclude actual innocence claims because the conviction was the result of a guilty plea"); *People v. Schneider*, 25 P.3d 755, 760-61 (Colo. 2001) (*en banc*) (Concluding that prohibiting actual innocence claims following guilty pleas claims was not supported by the relevant Colorado Rule of Criminal Procedure, and that it would not "represent[ ] the just and fair outcome." The Colorado court "recognize[d] that defendants do choose to enter guilty pleas

for reasons other than clear guilt," although it "hasten[ed] to add that the court system must treat such pleas as final for most purposes.").

¶ 38    Most recently, the Supreme Court of Iowa considered this issue and concluded that the Iowa Constitution permits freestanding actual innocence claims to applicants for postconviction relief "even though they entered [guilty] pleas knowingly and voluntarily," overruling a line of cases "holding that defendants may only attack the intrinsic nature—the voluntary and intelligent character—of their pleas." *Schmidt*, 909 N.W.2d at 781.

¶ 39    The Iowa high court noted that innocent defendants may choose to plead guilty for a variety of reasons, explaining that when " 'the deal is good enough, it is rational to refuse to roll the dice, regardless of whether one believes the evidence establishes guilt beyond a reasonable doubt, and regardless of whether one is factually innocent.' " *Id.* at 787 (quoting *Rhoades v. State*, 880 N.W.2d 431, 436-38 (Iowa 2016)). The court further stated that "[p]leading guilty does not automatically mean the defendant is *actually* guilty. Sometimes, an innocent defendant is choosing the lesser of two evils: pleading guilty despite his or her actual innocence because the odds are stacked up against him or her, or going to trial with the risk of losing and the prospect of receiving a harsher sentence." (Emphasis in original) *Id.* at 788.

¶ 40    After noting that pleading guilty does not necessarily exclude an individual's actual innocence, the Supreme Court of Iowa concluded that an "innocent person has a constitutional liberty interest in remaining free from undeserved punishment" and that holding "a person who has committed no crime in prison strikes the very essence of the constitutional guarantee of substantive due process." *Id.* at 793.

¶ 41    After careful consideration, this court concludes that a freestanding actual innocence claim may be brought after a guilty plea, and that a defendant need not challenge the knowing

- 16 -

and voluntary nature of his or her plea to bring such a claim. The wrongful imprisonment of an innocent person violates procedural and substantive due process under the Illinois Constitution and, thus, a freestanding claim of actual innocence is cognizable under the Act. See *Washington*, 171 Ill. 2d at 487-89 ("In terms of procedural due process, we believe that to ignore such a claim [of actual innocence] would be fundamentally unfair. [Citations.] Imprisonment of the innocent would also be so conscience shocking as to trigger operation of substantive due process.").

¶ 42    As our supreme court has stated, "no person convicted of a crime should be deprived of life or liberty given *compelling* evidence of actual innocence." (Emphasis added). *Id.* at 489. We believe that such a tenet applies equally whether that person's conviction arises out of a trial, or out of a plea. Our supreme court recognized in *Washington* that "a 'truly persuasive demonstration of innocence' would, in hindsight, undermine the legal construct precluding a substantive due process analysis" and "would effectively reduce the idea [that the person be viewed as guilty] to legal fiction." *Id.* at 488. We find no reason to categorically preclude individuals from similarly presenting " '*truly persuasive* demonstration[s] of innocence,' " (emphasis added) (*id.*) merely because their convictions arose from guilty pleas.

¶ 43    As courts in other jurisdictions have recognized, there can be no doubt that there are some circumstances in which individuals who are actually innocent may, voluntarily, choose to plead guilty. Regardless of guilt or innocence, some individuals may choose to accept a guilty plea rather than face the uncertainty of a trial. See *Tuley*, 109 S.W.3d at 393 ("The guilty plea process is not perfect. But guilty pleas allow the parties to avoid the uncertainties of litigation. The decision to plead guilty, as we have seen in this case, may be influenced by factors that have nothing to do with the defendant's guilt. The inability to disprove the State's case, the inability to afford counsel, the inability to afford bail, family obligations, the need to return to work, and

other considerations may influence a defendant's choice to plead guilty or go to trial."); *Schmidt*, 909 N.W.2d at 787 ("Simply put, in economic terms, defendants engage in a cost-benefit analysis [when deciding whether to enter a guilty plea]. Entering into a plea agreement is not only rational but also more attractive than dealing with the uncertainty of the trial process and the possibility of harsher sentences." When the plea deal is good enough " 'it is rational to refuse to roll the dice, regardless of whether one believes the evidence establishes guilt beyond a reasonable doubt, and regardless of whether one is factually innocent.' "). Because a valid guilty plea does not necessarily preclude a petitioner's actual innocence, we see no reason to continue to confine that person, over evidence that would conclusively establish his innocence.

¶ 44    That being said, however, it is important to create a workable standard to analyze actual innocence claims following guilty pleas in order balance the interest in ensuring that individuals who are actually innocent are not unjustly imprisoned, with the interest in upholding the finality and solemnity of guilty pleas. To serve these interests, other jurisdictions that allow freestanding actual innocence claims after guilty pleas require that an individual bringing an actual innocence claim after a guilty plea meet a higher burden than is required for those bringing such claims after a trial. See *e.g.*, *Schneider*, 25 P.3d at 761-62 ("A defendant who voluntarily and knowingly enters a plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea.").

¶ 45    These jurisdictions employ varying standards in analyzing actual innocence claims after guilty pleas. See *Jamison v. State*, 765 S.E.2d 123, 129-30 (S.C. 2014) (Holding that a defendant's guilty plea does not preclude postconviction relief, but that "a valid guilty plea must be treated as final in the vast majority of cases." Accordingly, when an "applicant seeks relief on

the basis of newly discovered evidence following a guilty plea, relief is appropriate only where the applicant presents evidence showing that (1) the newly discovered evidence was discovered after the entry of the plea and, in the exercise of reasonable diligence, could not have been discovered prior to the entry of the plea; and (2) the newly discovered evidence is of such a weight and quality that, under the facts and circumstances of that particular case, the 'interest of justice' requires the applicant's guilty plea to be vacated. In other words, a [postconviction-relief] applicant may successfully disavow his or her guilty plea only where the interests of justice outweigh the waiver and solemn admission of guilt encompassed in a plea of guilty and the compelling interests in maintaining the finality of guilty-plea convictions.")*; In re Bell*, 170 P.3d 153, 157 (Cal. 2007) (requiring applicants to show that the new evidence " 'undermine[s] the entire prosecution case and point[s] unerringly to innocence or reduced culpability' " (internal quotation marks omitted)); *Schneider*, 25 P.3d at 761-62 (requiring defendant to show that in light of the new evidence, "the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded").

¶ 46 Other states require a defendant to meet a higher standard when bringing a freestanding, rather than a gateway, claim of actual innocence, but do not differentiate between claims brought after a trial or after a plea. These states generally employ a "clear and convincing" standard, under which a petitioner making a freestanding actual innocence claim must show *by clear and convincing evidence* that no reasonable juror would have convicted him in light of the new evidence. See *Tuley*, 109 S.W.3d at 392, 397 (requiring that the defendant establish by clear and convincing evidence that no rational jury would convict the applicant in light of the new evidence); *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (*en banc*); *Schmidt*, 909 N.W.2d at 797 (holding that freestanding actual innocence claims were available to

applicants even after a guilty plea and that to succeed on such a claim, "the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence"); *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 548 (Mo. 2003) ("The appropriate burden of proof for a habeas claim based upon a freestanding claim of actual innocence should strike a balance between these competing standards and require the petitioner to make a clear and convincing showing of actual innocence that undermines confidence in the correctness of the judgment."); *People v. Cole*, 765 N.Y.S.2d 477, 486 (N.Y. Crim. Ct. 2003); *Miller v. State*, 2014 UT App 280, ¶ 6, 340 P.3d 795 (*per curiam*); see also *Miller v. Commissioner of Correction*, 700 A.2d 1108, 1130-31 (Conn. 1997) (adopting a clear and convincing standard and also requiring the petitioner to show that "no reasonable fact finder would find the petitioner guilty").

¶ 47    After recognizing that a defendant who pleaded guilty could raise an actual innocence claim, the Colorado Supreme Court in *Schneider* explained that it had previously "only articulated the standard applicable to the determination of when a defendant who has been convicted *at trial* may seek a new trial based upon newly discovered evidence." (Emphasis added.) *Schneider*, 25 P.3d at 761. Specifically, in *People v. Gutierrez*, 622 P.2d 547, 559-60 (Colo. 1981) (*en banc*), the Colorado Supreme Court determined that a defendant claiming actual innocence after a trial conviction is required to show

> " ' "that the evidence was discovered after the trial; that defendant and his counsel
> exercised diligence to discover all possible evidence favorable to the defendant
> prior to and during the trial; that the newly discovered evidence is material to the
> issues involved, and not merely cumulative or impeaching; and that on retrial . . .

the newly discovered evidence must be of such a character as to probably bring about an acquittal verdict if presented at another trial." ' " *Schneider*, 25 P.3d at 761 (quoting *Gutierrez*, 622 P.2d at 559-60).

¶ 48 The court noted, however, that it had not yet "examined the proper standard for when a defendant may withdraw a properly entered guilty plea under circumstances of newly discovered evidence," and that the *Gutierrez* test was not appropriate in such circumstances. *Id.* The court

"distinguish[ed] the circumstances here from those in *Gutierrez* by noting that here, it was not an independent trier of fact that determined the defendant's guilt based upon sworn trial testimony—it was the defendant who acknowledged his own guilt. Because of that simple fact, the trial court handling the postconviction proceeding is necessarily in a different position. That court does not have the full record of the prior trial, but it does have the defendant's own statements of guilt. *Gutierrez* presumes that the trial judge is in a position to weigh the new testimony against that provided at the prior trial and assess whether an acquittal verdict would enter based upon the new evidence. In the circumstance in which there never was a trial on the charges, the trial court is hampered in that assessment. Furthermore, there must be some consequence attached to the decision to plead guilty. A defendant who voluntarily and knowingly enters a plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea. Defendants should be allowed to withdraw properly entered guilty pleas only in order to avoid manifest injustice. [Citation.]." *Id.*

¶ 49    The Colorado court then adopted "a modified standard" for actual innocence claims after guilty pleas, in which the

> "defendant must present evidence from which the trial court may reasonably conclude that: (1) the newly discovered evidence was discovered after the entry of the plea, and, in the exercise of reasonable diligence by the defendant and his or her counsel, could not have been earlier discovered; (2) the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded; and (3) the newly discovered evidence would probably bring about a verdict of acquittal in a trial." *Id.* at 761-62.

¶ 50    The court noted that the first and third prongs were essentially taken from the *Gutierrez* test, but the second prong was "articulate[d] for the first time in this case." *Id.* at 762. Rather than requiring only that the evidence be " 'material to the issues involved, and not merely cumulative or impeaching,' " as in the *Gutierrez* test after a trial conviction (*id.* at 761), a defendant claiming actual innocence after a guilty plea had to meet a stricter standard, showing that the charges "were actually false or unfounded" (*id.* at 762). The court held that "this formulation evolves from the standards set forth by this court in *Gutierrez* and maintains the appropriate balance between finality and fundamental fairness." *Id.*

¶ 51    As stated above, the Supreme Court of Iowa also concluded that a defendant could raise an actual innocence claim after a guilty plea; however, the supreme court articulated a different standard for addressing such claims. The Iowa high court "balance[d] the interest of an innocent defendant and that of the state" and concluded that "after pleading guilty, applicants claiming actual innocence must meet the clear and convincing standard," *i.e.*, "the applicant must show by

clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence." *Schmidt*, 909 N.W.2d at 797. The court found that adopting the clear and convincing standard "simultaneously vindicate[d]" the principle that "it is far worse to convict an innocent person than to acquit a guilty one" while "recogniz[ing] the interest of the state in finality of criminal litigation." *Id.*

¶ 52    We conclude, like many other jurisdictions described above, that the standard to establish an actual innocence claim after a guilty plea must be elevated from the standard used after a guilty finding following trial. Although we will not preclude a defendant who has pleaded guilty from asserting actual innocence, courts should "give great respect to knowing, voluntary, and intelligent pleas of guilty" (*Tuley*, 109 S.W.3d at 391-93), and "the court system must treat such pleas as final for most purposes" (*Schneider*, 25 P.3d at 760-61). As the United States Supreme Court has stated, claims of actual innocence must be supported "with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Although the Illinois Supreme Court has cited the *Schlup* language (*People v. Edwards*, 2012 IL 111711, ¶ 32), it has not specifically limited actual innocence claims to the delineated types of evidence, and it has cautioned that requiring a defendant to present evidence that is "reliable" or "trustworthy" does not mean that a trial court may "effectively assess the credibility of witnesses and affiants by judging the reliability of their statements" before a third stage evidentiary hearing. *People v. Sanders*, 2016 IL 118123, ¶ 37.

¶ 53    As stated previously, the elements of an actual innocence claim in Illinois require that the evidence in support of the claim must be newly discovered; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial. *Edwards*, 2012 IL 111711, ¶ 32. A defendant bears the " 'burden of proof *** to show a denial of [a] constitutional right by a preponderance of the evidence." *Coleman*, 2013 IL 113307, ¶ 92 (quoting *Stovall*, 47 Ill. 2d at 47). A claim of actual innocence is not a challenge to whether the defendant was proved guilty beyond a reasonable doubt, but rather an assertion of total vindication or exoneration. *Barnslater,* 373 Ill. App. 3d at 520.

¶ 54    We have considered the various approaches utilized in other jurisdictions to create a standard by which such claims can be analyzed. Although many of those jurisdictions have chosen to modify the elements to prove an actual innocence claim, making a claim more difficult to prove (see *Schneider*, 25 P.3d at 762*; Jamison*, 765 S.E.2d at 130; *In re Bell*, 170 P.3d at 157), we question whether those approaches are too stringent, too vague, or feasible in our state. Even more importantly, however, the elements to establish an actual innocence claim in Illinois are well established, and we hesitate to change those elements in the context of a guilty plea without clear guidance from our supreme court.

¶ 55    After considering the various approaches used by other jurisdictions, we conclude that, to overcome the finality of a valid guilty plea, a defendant raising a freestanding actual innocence challenge after a guilty plea must present a " 'truly persuasive demonstration of innocence' " in the form of "compelling evidence" (*Washington*, 171 Ill. 2d at 488-89) and must establish the elements of an actual innocence claim (see *Edwards*, 2012 IL 111711, ¶ 32) by clear and convincing evidence. This standard would raise the defendant's burden of proof from a mere

preponderance that is required following a conviction after a trial. See *Coleman*, 2013 IL 113307, ¶ 92 (citing *Stovall*, 47 Ill. 2d at 47).

¶ 56    Clear and convincing evidence is " 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (quoting *In re John R.*, 339 Ill. App. 3d 778, 781 (2003)). Although the description is stated in terms of reasonable doubt, our courts have considered clear and convincing evidence to be "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010) (citing *In re D.T.*, 212 Ill. 2d 347, 362 (2004) and *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995)).

¶ 57    Additionally, a "truly persuasive demonstration of innocence" by "compelling evidence," (*Washington*, 171 Ill. 2d at 488-89) may be made by presenting evidence of the type articulated in *Schlup,* 513 U.S. at 324 ("exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence") or other evidence of a similarly significant character.

¶ 58    Requiring a defendant to present a "truly persuasive demonstration of innocence" in the form of "compelling evidence," and to establish the elements of an actual innocence claim by clear and convincing evidence adequately balances the conflicting interests in respecting the finality of guilty pleas, while also allowing those who entered guilty pleas to establish their innocence in exceptional circumstances. This standard also takes into account the obvious difference between convictions after pleas and after trials—specifically that a guilty plea short-circuits the proceedings, depriving both parties of an opportunity for a trial where all the evidence can be presented and tested. See *Schneider*, 25 P.3d at 761-62 ("[The traditional actual innocence standard] presumes that the trial judge is in a position to weigh the new testimony

against that provided at the prior trial and assess whether an acquittal verdict would enter based upon the new evidence. In the circumstance in which there never was a trial on the charges, the trial court is hampered in that assessment.").

¶ 59    Because we review the trial court's dismissal of defendant's postconviction petition without an evidentiary hearing *de novo,* (*Coleman*, 2013 IL 113307, ¶ 92), and because this court may affirm on any basis supported by the record (*People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008)), we will review the merits of defendant's claim to determine if he has made a showing sufficient to warrant a third stage evidentiary hearing.

¶ 60    As stated above, the trial court in this case concluded that defendant had failed to make a substantial showing of actual innocence because his proposed newly discovered evidence constituted inadmissible hearsay, and therefore, it would not change the result of a trial. We note however, that the supreme court recently adopted and amended Illinois Rule of Evidence 1101, to add "postconviction hearings" to a list of proceedings to which the rules of evidence— including the rules against hearsay—"do not apply." Ill. R. Evid. 1101(b)(3) (eff. Apr. 8, 2013). In this appeal, the State claims, and defendant acknowledges, that Coe's affidavit consists of hearsay. However, defendant relies on Rule 1101(b)(3) to claim that because the rules of evidence do not apply, an evidentiary hearing is still warranted.

¶ 61    Many prior Illinois cases have relied on the general rule that hearsay is insufficient to support a petition under the Act. See *People v. Morales*, 339 Ill. App 3d 554, 565 (2003) (hearsay affidavits are generally insufficient to support postconviction claims); *People v. Salgado*, 2016 IL App (1st) 133102, ¶ 47 (affidavits containing only hearsay are generally insufficient to warrant a third-stage hearing); *People v. Gray*, 2011 IL App (1st) 091689, ¶ 16 (noting that the content of an affidavit was "no more than hearsay, which, as a genral rule, is

insufficient to support a claim" under the Act); *People v. Wallace*, 2015 IL App (3d) 130489, ¶¶ 25-28 (The affidavit providing that a fellow inmate confessed to shooting the victim while the inmate and the affiant were incarcerated together was inadmissible hearsay, which could not "be the basis of a defendant's postconviction petition." "Inadmissible hearsay cannot constitute substantive evidence by any definition."); *People v. Coleman*, 2012 IL App (4th) 110463, ¶¶ 54-55 (concluding that an affidavit supporting a postconviction petition "should consist of factual propositions to which the affiant could testify in an evidentiary hearing" and where the affidavit was composed of inadmissible hearsay, the "allegations by themselves did not merit further proceedings").

¶ 62    Many of these cases, however, were decided prior to the rule change. Since then, only a few cases have analyzed Rule 1101 or the interplay of the rule and the requirements to state a claim of actual innocence under the Act. See *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 119 (finding that the hearsay affidavits at issue in that case, indicating that a gang member had bragged to one of the affiants about shooting the victim, were admissible under Rule 1101(b)(3) and must be taken as true, at the second stage of the proceedings, when determining whether to advance the petition to a third-stage evidentiary hearing); *People v. Gibson*, 2018 IL App (1st) 162177, ¶ 138 (finding pursuant to Rule 1101, that a hearing under the Torture Inquiry and Relief Commission is a "postconviction hearing" to which the Rules of Evidence do not apply); *People v. Warren*, 2016 IL App (1st) 090884-C, ¶¶ 166-67 (Gordon, J., specially concurring).

¶ 63    We point out that Rule 1101(b)(3) appears to conflict with the requirement that a postconviction actual innocence claim must be of such a conclusive character that it would probably change the result on retrial. If a trial court must determine whether proposed evidence would probably change the result on retrial, it necessarily envisions a determination of whether

that evidence would be admissible at a retrial. As the trial court acknowledged, if such evidence would not be admissible in a retrial, it would be impossible for it to change the result. Despite this apparent conflict, the change to Rule 1101 makes the evidence rules "inapplicable" to postconviction proceedings, and it was in effect when the trial court considered defendant's postconviction petition. The trial court, however, did not have the benefit of any of the cases that have since considered the change to Rule 1101 at that time, and this court will consider the hearsay affidavit in evaluating defendant's claim.

¶ 64    Additionally, the parties agree generally that the court should consider the allegations in his petition against the record of his guilty plea, in particular the factual basis presented at the guilty plea hearing regarding victim M.J., but they dispute whether the factual basis regarding the offense against victim Dooley should be considered. The State contends that the evidence of defendant's offense against Dooley would likely be admissible at a trial as other crimes evidence, on retrial based on Illinois Rule of Evidence 404(b) (eff. Jan 1, 2011), which states generally that evidence of other crimes is not admissible to prove action in conformity therewith, but that such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Defendant however, claims that the admissibility of such evidence is "speculative," and thus, the factual basis involving Dooley should not be considered.

¶ 65    We agree with the State. As we explained above, the supreme court has made the Rules of Evidence "inapplicable" to postconviction proceedings. See Ill. R. Evid. 1101(b)(3) (eff. Apr. 8, 2013). We also note that defendant has not challenged the validity of his guilty plea to the charge against Dooley in any way. Accordingly, we conclude that the entire record, including evidence related to the offense against Dooley, may be considered against the allegations in

defendant's postconviction petition in determining whether defendant has shown a substantial deprivation of his constitutional rights by clear and convincing evidence to warrant a third stage evidentiary hearing. Nonetheless, even if we considered only the evidence related to his plea to the offense against M.J., and declined to consider the evidence regarding Dooley, the result would be the same.

¶ 66    Assuming that defendant's proffered evidence is newly discovered, material, and not cumulative, we do not find it to be of such a conclusive character that it would probably change the result on retrial—the most important element of an actual innocence claim. *Washington*, 171 Ill. 2d at 489.

¶ 67    Without engaging in any credibility determinations, we note that the evidence presented here is not of the character that would support an actual innocence claim. Defendant presents the affidavit of a non-eyewitness, who avers to a conversation he had with the victim more than 13 years' before he inscribed his affidavit. This type of evidence is not scientific evidence, physical evidence or an eyewitness account, and we do not find it would be other evidence of a similarly significant character. See *supra* ¶ 57. We conclude that this evidence is not "compelling evidence," which presents a "truly persuasive demonstration of innocence." *Washington*, 171 Ill. 2d at 488-89.

¶ 68    Our supreme court has noted that recantation testimony is regarded as inherently unreliable and a court will not grant a new trial on that basis absent extraordinary circumstances. *Sanders*, 2016 IL 118123, ¶ 33; *People v. Beard*, 356, Ill. App. 3d 236, 242 (2005). The supreme court has further noted that recantation testimony is "inherently suspect" and "treated with caution" and, as a result, it is "not sufficient to require a new trial absent proof the witness's earlier testimony was perjured." *Id*. Although a determination of the reliability of such evidence

is not made at the motion to dismiss stage of postconviction proceedings (*Sanders*, 2016 IL 118123, ¶ 33), we note that the proposed evidence here, from an affiant who claims to have spoken to the now-deceased victim near the time of defendant's trial, is not even recantation evidence.

¶ 69    Taking the contents of the affidavit as true, specifically that M.J. told Coe that she misidentified defendant, M.J.'s statement to Coe at most contradicts the record in this appeal. The record of defendant's guilty plea shows that defendant entered a valid and voluntary guilty plea, and that he understood the charges, the penalties, and the rights he was giving up by pleading guilty. The factual basis for defendant's plea established that after knocking on M.J.'s door and indicating he needed to make a phone call, defendant pushed M.J. to the floor and fled from her residence with her VCR. He returned shortly thereafter, and identified himself as a police officer before forcing his way into the residence and sexually assaulting M.J. Defendant then left the residence with M.J.'s television. The record also shows that M.J. identified defendant in a lineup. Defendant verbally confessed to the police and an assistant State's Attorney, and signed a written confession.

¶ 70    Against this strong evidence of guilt, defendant presents the affidavit of Coe, who claims that he spoke to M.J. in 1999, and that she told him that she had misidentified defendant. At most, such evidence would merely impeach or contradict the record, which indicates that M.J. identified defendant as her attacker and that defendant confessed (see *Arizona v. Fulminante,* 499 U.S. 279, 296 (1991) (internal quotations and citation omitted) (holding that a confession may be the "most probative and damaging evidence that can be admitted" against a defendant))—and pleaded guilty—to doing so. See *People v. Adams*, 2013 IL App (1st) 111081, ¶ 36 (Evidence of actual innocence "must support total vindication or exoneration, not merely present a reasonable

doubt" as to the petitioner's guilt); *People v. Collier*, 387 Ill. App. 3d 630, 636–37 (2008) (when evidence merely impeaches or contradicts trial testimony, it is not typically of such conclusive character as to justify postconviction relief); *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009) (impeachment of a prosecution witness is an insufficient basis for granting a new trial). In such circumstances, we conclude that the proposed evidence is not of such conclusive character that it would probably change the result on retrial. See *Barnslater*, 373 Ill. App. 3d at 515-16, 522-23 (the defendant failed to make a substantial showing of actual innocence when he submitted an affidavit from the victim who averred that the defendant had not sexually assaulted her and that her mother had forced her to implicate defendant. The victim's "recantation affidavit would merely impeach her stipulated testimony in the factual basis for the plea" and evidence "which merely impeaches a witness will typically not be of such conclusive character as to justify postconviction relief." (Internal quotation marks omitted)); *People v. Smith*, 177 Ill. 2d 53, 85-86 (1997) (noting that evidence that the central trial witness who testified against the defendant had told fellow inmates that the defendant was not involved in the killing did not require a new trial. Such evidence could show only that the witness "had a bias, interest, or motive to testify falsely" and "would be admissible only for purposes of impeaching" the witness, which was "an insufficient basis for granting a new trial."). Accordingly, we find that defendant has not made a substantial showing of a constitutional violation by clear and convincing evidence, and that he has failed to present a "truly persuasive demonstration of innocence" in the form of "compelling evidence" (*Washington*, 171 Ill. 2d at 488-89) to warrant a third stage evidentiary hearing after a previously entered guilty plea.

¶ 71  For the foregoing reasons, the judgment of the circuit Court of Cook County is affirmed.

¶ 72  Affirmed.

¶ 73    JUSTICE GORDON, specially concurring:

¶ 74    I agree with the carefully analyzed majority opinion, but I must write separately on the issue of the affidavit, which contains unsupported hearsay. As noted by the majority, our Illinois Supreme Court has recently adopted and amended Illinois Rule of Evidence 1101 to add "postconviction hearings" to a list of proceedings to which the rules of evidence–including the rules against hearsay–"do not apply." Ill. R. Evid. 1101(b)(3) (eff. Apr. 8, 2013).

¶ 75    An affidavit of a non-eyewitness who avers to a conversation he had with a victim more than 13 years before he executed the affidavit that the defendant was not the offender and names someone else is unreliable evidence unsupported by the record and cannot be shown to be "compelling evidence," which presents a "truly persuasive demonstration of innocence" at an evidentiary hearing, especially in a case where the defendant pled guilty to the charges. To allow an evidentiary hearing based on such evidence would be a waste of judicial economy and would not further the court's purpose to seek and find justice. To allow an evidentiary hearing on such an affidavit would open the "floodgates" on thousands of cases where the victims have died.