2019 IL App (1st) 170442

SIXTH DIVISION
SEPTEMBER 6, 2019

No. 1-17-0442

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 08 CR 17293 |
| | ) | |
| TERRELL WESLEY, | ) | Honorable |
| | ) | Gregory Robert Ginex, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Delort and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant-appellant Terrell Wesley, convicted of first degree murder in the shooting death of Everett Brown in July 2008, appeals the first stage dismissal of his postconviction petition. On appeal, the defendant argues that the circuit court erred in dismissing his petition where he stated the gist of a claim that he was denied due process and effective assistance of trial and appellate counsel where the circuit court admitted into evidence two witnesses' prior inconsistent statements that were not based on personal knowledge of the shooting. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 2                           BACKGROUND

¶ 3    The facts underlying the defendant's murder conviction were set forth in great detail in our order on direct appeal (*People v. Wesley*, 2015 IL App (1st) 130710-U), and we repeat only those facts necessary to the disposition of the current appeal.

¶ 4    On July 17, 2008, the defendant shot Brown outside a grocery store in Maywood, Illinois. At a 2010 bench trial, only one witness, Jason Ervin, identified the defendant as the shooter. Ervin testified that he saw the defendant leaving the grocery store, walking backwards, and holding a gun. He then saw the defendant enter a black Pontiac driven by a female. Ervin took down the license plate number of the Pontiac and called the police. After the incident, Ervin spoke to police and described the defendant as a black man with short "dreads."

¶ 5    Two other witnesses who were near the store heard gunshots and observed a black man wearing a white T-shirt walking backward pointing a gun at the store. Both witnesses described the man as having "stringy-like hair" or "dreads." The witnesses saw the man get into a black Pontiac, though they disagreed about whether he entered the driver's or passenger's side door. Neither witness saw the man's face.

¶ 6    Shara Cannon, the defendant's girlfriend at the time of the shooting, testified that, on the day of the shooting, she was driving a rental car "looking for weed" and the defendant was not with her. According to Cannon, the defendant did not have dreads on the day of the shooting. Cannon admitted that she appeared before the grand jury on July 21, 2008, but testified that she did not remember either the questions she was asked or the answers she gave. Based on this testimony, the court permitted the State to introduce, as substantive evidence, Cannon's testimony before the grand jury that was inconsistent with her trial testimony.

¶ 7    As we previously recounted, Cannon testified before the grand jury as follows:

"[The] defendant had a 'two-strand twist' hairstyle. On the day of the shooting, she drove with defendant, who was wearing a white t-shirt, looking to purchase marijuana. At one point defendant asked her to stop so that he could 'holler' at someone at a convenience store. She stopped so that he could exit the car, then

drove around before picking him up. Defendant got into the passenger side of the car and directed her to drive to Leon Thomas's house. When they arrived, defendant went inside for a few minutes. Defendant and Thomas then got into the car and Cannon drove home. Once there, she began to clean. Defendant and Thomas were later joined by Pierre Robinson, Devlin Williams, and Tangeric Washington. The men chatted and smoked marijuana. At one point, Cannon heard defendant say that he tapped on a window, that a guy ran into the store, and that he pointed and shot." *Id.* ¶ 9.

Also before the grand jury, Cannon testified that she provided a written statement to the police that was substantially true and correct and tracked her testimony at the hearing.

¶ 8    On cross-examination at trial, Cannon testified that she was taken into custody because drugs were allegedly recovered from her home and that the police told her that things would be easier if she told them that the defendant shot a man. The State subsequently introduced into evidence Cannon's videotaped statements, which recounted the same sequence of events described in both Cannon's written statement and her grand jury testimony.

¶ 9    Pierre Robinson likewise testified inconsistently with his grand jury testimony during trial. Before the grand jury, Robinson testified as follows:

"[O]n the day of the shooting, defendant had 'little braids' and *** Williams picked [Robinson] up and took him to Cannon's home. When defendant learned that the victim was dead, defendant said that no witnesses were going to tell on him now. Defendant further said that when he tried to shoot the victim, the gun jammed, so the victim ran inside the store. However, the victim came back outside and taunted defendant. Defendant kept 'messing with the gun' and was

able to shoot the victim." *Id.* ¶ 12.

At trial, Robinson denied the truthfulness of this testimony. He testified that he gave those answers before the grand jury because the police threatened to charge him with murder if he did not testify that the defendant shot someone.

¶ 10    At the conclusion of the State's case, the defendant moved for a directed verdict. The court heard argument and denied the motion. The next day, before the parties presented closing arguments, the court recited the evidence and found the defendant guilty. When the defendant reminded the court that the parties had not yet presented closing arguments, the court apologized and allowed the parties to do so. Following argument, the court stated that it considered the parties' lengthy closing arguments and again found the defendant guilty. In reaching this conclusion, the court found that neither Cannon's nor Robinson's trial testimony was credible but that their grand jury testimony was admissible as substantive evidence. The court did not refer to Cannon's written or videotaped statements.

¶ 11    In his supplemental motion for a new trial, the defendant argued, in relevant part, that the admission of Cannon's and Robinson's grand jury testimony as well as the admission of Cannon's written and recorded statements as substantive evidence was error due to the fact that neither witness had personal knowledge of the murder. The court disagreed and denied the motion for a new trial.

¶ 12    The court ultimately sentenced the defendant to 50 years' imprisonment, and the defendant timely appealed. The sole issue on appeal was whether the defendant was deprived of his right to a fair trial and his right to counsel because the court decided the case before the parties could present closing argument. In a June 2015 order, we affirmed the judgment of the circuit court of Cook County. We rejected the defendant's argument, noting that the circuit court

acknowledged its error, permitted the parties to give closing arguments, and "reconsidered everything" in light of those arguments before issuing its ruling.

¶ 13    On August 5, 2016, the defendant filed a *pro se* postconviction petition arguing, *inter alia*, that the admission of Cannon's and Robinson's prior inconsistent statements was a constitutional error depriving him of his right to due process. He also contended that both trial and appellate counsel were ineffective for failing to bring this error to the court's attention. On October 14, 2016, the circuit court summarily dismissed the petition as frivolous and patently without merit, finding that trial counsel, in his supplemental posttrial motion, objected to the substantive admission of both Cannon's and Robinson's prior statements. The defendant moved to file a late notice of appeal on February 23, 2017, which this court allowed.

¶ 14                                      ANALYSIS

¶ 15    We note that we have jurisdiction to review this matter, as we allowed the defendant to file a late notice of appeal following the circuit court's order dismissing his petition. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 16    The Post-Conviction Hearing Act (Act) allows a defendant who is imprisoned in a penitentiary to challenge his conviction or sentence for violations of his federal or state constitutional rights. 725 ILCS 5/122-1 (West 2016); see also *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). A defendant electing to proceed under the Act must first file a petition, verified by affidavit, in the circuit court in which the original proceeding occurred. 725 ILCS 5/122-1(b) (West 2016). Because a postconviction proceeding is a collateral attack on the judgment, the petition must be limited to constitutional issues that have not been, nor could have been, adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56 (2002).

¶ 17    The Act establishes a three-stage process for adjudicating a postconviction petition. See 725 ILCS 5/122-1 (West 2016). At the first stage, at issue here, the trial court may dismiss a petition only if it is frivolous or patently without merit. *People v. Harris*, 224 Ill. 2d 115, 125-26 (2007). Because most postconviction petitions at this stage are drafted by *pro se* defendants, the threshold for survival of the petition is low. *People v. Allen*, 2015 IL 113135, ¶ 24. It is necessary only for the petition to allege facts sufficient to state the "gist" of a constitutional claim. *People v. Jones*, 211 Ill. 2d 140, 144 (2004). Accordingly, the circuit court may dismiss a petition at this stage if the petition has "no arguable basis either in law or in fact" and relies on "indisputably meritless" legal theories or "fanciful factual allegation[s]." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A legal theory is meritless if it is completely contradicted by the record, while a fanciful factual allegation is "fantastic or delusional." *Id.* at 16-17. Importantly, the circuit court must take all factual allegations as true and construe them liberally. *Allen*, 2015 IL 113135, ¶ 25. Our review of the circuit court's first stage dismissal is *de novo*. *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010).

¶ 18    The defendant's arguments on appeal surround the admission of Cannon's and Robinson's grand jury testimony and Cannon's written and videotaped statements as substantive evidence. According to the defendant, his postconviction petition presented the gist of a claim that the admission of these statements violated his due process rights and that trial and appellate counsel were ineffective for failing to raise the alleged due process violation.

¶ 19    Initially, we note that the defendant's due process and ineffective assistance of trial counsel claims could have been raised on direct appeal but were not. Ordinarily, these claims would be forfeited (see *Pitsonbarger*, 205 Ill. 2d at 456); however, because the defendant alleges that the forfeiture was due to appellate counsel's ineffective assistance, we may consider them

(see *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005) (holding that forfeiture may be excused where it stems from the ineffective assistance of appellate counsel)).

¶ 20    A claim of ineffective assistance of appellate counsel requires a defendant to show (1) counsel's performance was deficient and (2) the deficient representation was prejudicial. *People v. Papaleo*, 2016 IL App (1st) 150947, ¶ 21. Significantly, appellate counsel is not required to brief every conceivable issue on appeal but may competently refrain from briefing meritless issues. *People v. Jones*, 362 Ill. App. 3d 31, 35 (2005). Unless the underlying issue is meritorious, there is no prejudice from the failure to raise that issue on appeal. *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011). During first stage review, the circuit court may not dismiss a petition alleging ineffective assistance of counsel if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that defendant was prejudiced as a result. *Hodges*, 234 Ill. 2d at 17.

¶ 21    Here, the defendant argues that appellate counsel was ineffective for failing to argue that Cannon's and Robinson's prior inconsistent statements regarding the defendant's admission to the murder were substantively inadmissible based on Cannon's and Robinson's lack of personal knowledge of the murder itself and that trial counsel was ineffective for failing to object to their admission on this basis. As support, the defendant cites section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2016)) and Illinois Rule of Evidence 602 (eff. Jan. 1, 2011).

¶ 22    Section 115-10.1 of the Code provides, in relevant part, that evidence of a witness's prior statement is not inadmissible as hearsay if

>    "(a) the statement is inconsistent with his testimony at the hearing or trial,
>    and

(b) the witness is subject to cross-examination concerning the statement,
and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which

the witness had personal knowledge[.]" 725 ILCS 5/115-10.1(a)-(c) (West

2016).

¶ 23     Illinois Rule of Evidence 602 (eff. Jan. 1, 2011) provides: "A witness may not testify to a
matter unless evidence is introduced sufficient to support a finding that the witness has personal
knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of
the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion
testimony by expert witnesses."

¶ 24     Turning first to Cannon's and Robinson's grand jury testimony, both witnesses testified
before the grand jury that they heard the defendant admit to shooting someone. The defendant
does not dispute that this was inconsistent with the witnesses' testimony at trial (where both
denied the truth of their grand jury testimony), nor does he dispute that both witnesses were
available for cross-examination. Instead, he argues that, notwithstanding the plain language of
section 115-10.1(c)(1), allowing the admission as nonhearsay of prior inconsistent statements
made under oath, their testimony was inadmissible because neither witness had personal
knowledge of the shooting. We disagree.

¶ 25     For purposes of section 115-10.1(c)(2), personal knowledge of an event is defined as
knowledge of the *crime being described* rather than the defendant's admission that he committed
the crime. *People v. Simpson*, 2015 IL 116512, ¶ 32. Needless to say, neither Cannon nor

Robinson had personal knowledge of the shooting, only of the defendant's statement admitting to it. But this court has routinely held that section 115-10.1(c)(1), by its plain language, does not impose a requirement of personal knowledge in order for grand jury testimony to be admissible. *People v. Cook*, 2018 IL App (1st) 142134, ¶ 49 (collecting cases).[1]

¶ 26 Despite this well-settled precedent, the defendant attempts to obscure the issue by arguing the relevance of Rule 602, which also refers to personal knowledge. It is sufficient to note that personal knowledge within the meaning of Rule 602 is not the same as the personal knowledge required by section 115-10.1(c)(2). Rather, "personal knowledge" under Rule 602 is knowledge acquired by one's own senses. See *People v. French*, 2017 IL App (1st) 141815, ¶ 68. Plainly, Cannon and Robinson heard the defendant admit to the shooting and thus, the admission of their grand jury testimony satisfied both Rule 602 and section 115-10.1(c)(1).

¶ 27 That leaves Cannon's written and videotaped statements,[2] wherein she likewise recounted hearing the defendant admit to the shooting. On appeal, the State does not dispute that these statements were inadmissible as substantive evidence pursuant to section 115-10.1(c)(2), insofar as they were not based on Cannon's personal knowledge of the crime itself. See *Simpson*, 2015 IL 116512, ¶ 32. At trial and during closing argument, however, the State urged the court to consider the videotaped statement substantively. While there is no indication from the court's ruling that it did so, the fact remains that the State argued, without objection, that it was substantively admissible. But this is not the end of the inquiry. The erroneous admission of

---

[1]Contrary to the defendant's contention, *People v. Lofton*, 2015 IL App (2d) 130135, did not reach a contrary result. There, the court found that a witness's prior inconsistent grand jury testimony was inadmissible under section 115-10.1(c)(1) because it contained double hearsay, not because the witness's testimony was not based on personal knowledge. *Id.* ¶ 32.

[2]The defendant argues that Robinson's written statement was likewise inadmissible, but the record reveals that Robinson's written statement was never admitted into evidence either substantively or for impeachment purposes. Thus, this argument holds no water.

evidence is subject to a harmless error analysis. *People v. Pelo*, 404 Ill. App. 3d 839, 865-66 (2010). An evidentiary error is harmless if there is no reasonable probability that the jury would have acquitted the defendant absent the error. *In re E.H.*, 224 Ill. 2d 172, 180 (2006).

¶ 28     This court has repeatedly held that the erroneous admission of a prior inconsistent statement is harmless where it is cumulative to properly admitted evidence. See *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 56 (error in admitting witness's audio and handwritten prior inconsistent statements was harmless where statements were identical to properly admitted grand jury testimony); *People v. Harvey*, 366 Ill. App. 3d 910, 921-22 (2006) (same); *Cook*, 2018 IL App (1st) 142134, ¶ 49 (same). This is the case here. Cannon's written and videotaped statements were nearly identical to her grand jury testimony that she heard the defendant admit to shooting someone. As such, the error in admitting those statements was necessarily harmless.

¶ 29     To the extent that the defendant argues that it is inappropriate for this court to undertake a harmless error analysis when reviewing a first stage dismissal, we disagree. On direct appeal, we considered whether the court's error in issuing its ruling before the parties had presented closing arguments was harmless and concluded that it was based on the substantial evidence of the defendant's guilt—namely, Ervin's identification testimony, the testimony of two witnesses who saw a man matching the defendant's description holding a gun outside the grocery store, and Cannon's and Robinson's grand jury testimony that the defendant admitted to the shooting. Thus, any argument that the error in admitting Cannon's written and video statements as substantive evidence was not harmless is contradicted by the record and has no arguable legal merit. See *Hodges*, 234 Ill. 2d at 17.

¶ 30     Because the defendant's arguments surrounding the admission of Cannon's and Robinson's prior inconsistent statements—whether styled as a due process violation or an

ineffective assistance of trial counsel claim—lack even superficial legal merit, we conclude that the defendant made no arguable claim that appellate counsel was ineffective for failing to raise these issues on direct appeal. As such, the postconviction petition was properly dismissed.

¶ 31                              CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.

---

**No. 1-17-0442**

---

| | |
|---|---|
| **Cite as:** | *People v. Wesley*, 2019 IL App (1st) 170442 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 08-CR-17293; the Hon. Gregory Robert Ginex, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Robert Hirschhorn, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Janet C. Mahoney and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |

---