2020 IL App (1st) 180029-U

THIRD DIVISION
September 23, 2020

No. 1-18-0029

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 19389 |
| | ) | |
| TYREACH STONE, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is reversed; postconviction counsel's failure to amend defendant's *pro se* postconviction petition by attaching the affidavit of a witness the petition argued could provide exculpatory testimony but who was not called to testify or contacted before defendant's trial, or to explain the absence of such an affidavit, affirmatively rebutted the presumption that postconviction counsel complied with Illinois Supreme Court Rule 651(c), requiring remand for the appointment of new postconviction counsel and second stage proceedings.

¶ 2    The State charged defendant, Tyreach Stone, with armed robbery with a firearm. Following a jury trial, defendant was convicted and sentenced to 27 years' imprisonment—12 years' imprisonment for armed robbery and a mandatory 15-year sentence enhancement for possession of a firearm during the commission of the offense. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Stone*, 2013 IL App (1st) 112933-U.

Defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). The trial court advanced defendant's *pro se* petition to the second stage of postconviction proceedings and appointed counsel to represent defendant. The State filed a motion to dismiss the petition. Defendant's postconviction counsel did not amend defendant's *pro se* petition and elected to stand on the *pro se* petition as drafted. The trial court granted the State's motion to dismiss.

¶ 3    For the following reasons, we reverse.

¶ 4                                    BACKGROUND

¶ 5    This court previously stated the evidence adduced at defendant's trial and other pertinent information concerning his conviction and direct appeal in our disposition of defendant's direct appeal in *Stone*, 2013 IL App (1st) 112933-U. The following is taken directly from that disposition and restated here for purposes of providing context for this appeal and to relay the information regarding defendant's underlying conviction and appeal necessary to our resolution of the issues raised herein.

¶ 6    Prior to trial, during jury selection, the trial court asked the potential jurors, in three separate groups, the following questions regarding "the *Zehr* principles" (see *People v. Sebby*, 2017 IL 119455, ¶ 6):

> 1. I am going to ask all of you individually if you will be able to adhere to those principles of our legal system.
>
> 2. Would each of you be able to follow the principles of law I said here today?
>
> 3. Do you agree to apply the principles of law in this case?

When the trial commenced the victim in the underlying case, Steven Tigner, testified that on October 16, 2010, at approximately 5:00 p.m., he was studying at Kennedy-King College in

Chicago when a security guard informed him the building was closing and the student had to leave. The victim packed his belongings and left to walk to a bus stop at 63rd and Halsted streets to get on a bus. (Kennedy King College is located between Halsted Street and Union Street on the west and east and between 63rd and 65th Street on the north and south in Chicago.[1]) He first stopped at a convenience store across the street from his bus stop for a snack. The victim first observed defendant and two other men standing outside the convenience store. Once at his bus stop the victim observed the men cross the street and secrete themselves behind a wall. One of the men peeked around the corner of the wall at the victim. Shortly all three men, including defendant, approached the victim and demanded his property. "One of the men, who Tigner later identified as defendant, came within three feet of Tigner, held a gun to Tigner's chest and said 'give me your shit.' " *Stone*, 2013 IL App (1st) 112933-U, ¶ 11. The victim described the robbery including his observations of the gun defendant used.

¶ 7    The security guard who had told the victim it was time for the school to close also testified that at approximately 5:00 p.m. he observed the robbery. The security guard testified he saw a man he later identified as defendant "punch Tigner in the head, grab a bag from him and then walk away briskly with the other men." *Id*. ¶ 13. Police arrested defendant and one other man soon after the offense occurred but did not recover a weapon.

---

[1]    "[W]e may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy." *People v. Chambers*, 2016 IL 117911. See https://www.google.com/maps/place/Kennedy-King+College/@41.7780333,87.6458691,17z/data=!4m5!3m4!1s0x880e2f25deb91119:0x1698185dbb70 3228!8m2!3d41.7782973!4d-87.6439004

¶ 8    After trial the jury returned a verdict of guilty of armed robbery with a firearm. *Id*. ¶ 19.
The trial court sentenced defendant to an aggregate term of 27 years' imprisonment. On direct
appeal this court addressed defendant's arguments that:

> 1. "[T]he State failed to prove beyond a reasonable doubt that defendant had a
> firearm during the commission of the robbery and, therefore, no rational trier of
> fact could have found that defendant possessed a firearm at the time of the
> robbery;"
>
> 2. "[T]he trial court improperly enhanced his sentence by 15 years pursuant to 720
> ILCS 5/18-2(b) (West 2008))" because our supreme court found that section
> unconstitutional and thus it was "void *ab initio* and could not be applied in this
> case;" and
>
> 3. "[T]he trial court denied his right to a fair and impartial jury by: (1) failing to
> admonish the jurors that the defendant's failure to testify cannot be held against
> him, and (2) failing to ascertain whether the jurors understood and accepted the
> admonishments that the trial court judge did read to the jurors."

As to the final argument defendant failed to preserve the issue for appeal. *Id*. ¶ 40. This court
addressed the issue under the plain error rule and first determined that the trial court had erred in
failing to comply with the requirements of Illinois Supreme Court Rule 431(b) (eff. July 1,
2012). *Id*. ¶ 48. See also *Sebby*, 2017 IL 119445, ¶ 49 (Rule 431(b) "requires the trial court to
ask potential jurors whether they understand and accept the four *Zehr* principles"). However,
this court then found it could not find that the evidence was closely balanced and, therefore, there
was "no ground upon which to reverse defendant's conviction" under the plain error rule. See *id*.
¶ 55. See generally *People v. Albarran*, 2018 IL App (1st) 151508, ¶ 59 (holding the defendant

was not entitled to relief under first-prong plain error review because the evidence was not closely balanced).

¶ 9 After this court affirmed defendant's conviction on direct appeal defendant filed the *pro se* petition for postconviction relief that is the subject of this appeal. On July 29, 2014, defendant filed the *pro se* postconviction petition. The petition alleged, in pertinent part, that the "issues presented by the petition *** were not included in defendant's direct appeal due to the ineffective assistance of appellate counsel." The petition stated defendant's "constitutional claims" as follows:

"Claim One:

Petitioner was denied his right to due process where petitioner's sentence is unfairly disproportionate to co-defendant Matthew Barnes. Barnes received a 6 year sentence and petitioner received 27 years. This discrepancy was fundamentally unfair. [Citation.]

Claim Two:

Petitioner received the ineffective assistance of trial counsel for failing to obtain video recordings, and call material witnesses. Had counsel at minimal (*sic*) attempted to secure the above the defense would have focused on an alternative suspect.

Claim Three:

Petitioner received the ineffective assistance of appellate counsel for failing to present issues that were raised and preserved in petitioner's post-trial motion. And ignored the requests petitioner made regarding claims with the above arguments.

- 5 -

Claim Four:

Petitioner was denied his right to a fair trial when the State was allowed to introduce perjured testimonies."

The petition further stated, in pertinent part, that "[p]etitioner asked counsel on various occasions to contact the witnesses he knew would be crucial to his defense. Counsel failed at a minimal (*sic*) to contact the witnesses. *** Appellate counsel's performance was deficient because counsel did not investigate and brief Petitioner's meritorious claims. The issue(s) that were briefed were clearly and significantly weaker than petitioner's claims."

¶ 10 Defendant attached two of his own affidavits to the petition. The first affidavit stated, in pertinent part, as follows:

"2. Defense counsel was asked to send investigators on December 29, 2010, to see if a video cameras (*sic*) could be located at the scene of the alleged crime (armed robbery) and to speak with my witness. She plainly refused. See 65-N O-25 Exhibit [illegible].[2]

3. Defense counsel was asked to object to the Illinois Supreme Court Rule 431(b) admonishments at trial nor did counsel raise the issue in a post-trial motion. She plainly refused.

---

[2] Defendant attached page O-25 of the record of proceedings of defendant's trial to his petition. In that portion of the transcript defendant's trial attorney lists the evidence that was available to the State but which was not produced at trial, including photos or videos of the robbery. That portion of the transcript does not mention any witnesses but defendant's attorney did state "[i]dentification testimony is the only evidence" and goes on to argue that Tigner's identification is flawed, and that the security guard only observed the incident at a distance and his testimony is "not anywhere near what Steven Tigner told you."

4.    I asked Appellate (*sic*) counsel to look into the above matters, however, appellate counsel did not investigate the claim nor briefed (*sic*) these claims as requested."

The second affidavit by defendant stated, in pertinent part, as follows:

"3.    On October 16, 2010, shortly before 5:00 p.m., I was walking down 64th & Halstead (*sic*) to go to 63rd & halsted (*sic*) to meet Brenda Green at the Chicago Transit Authority metra station (*sic*) to give her, her cigarettes she asked me to get for her prior to when she was getting on the train.

4.    When I reached the Chicago Transit Authority metra station I stood outside to wait for her and the process of waiting I observed Matthew, Eric and Peanut walking down 63rd & Halsted.

5.    After I saw them they saw me at the same time and approached me and Matthew asked what was I doing, and I told him waiting for Brenda to get off the Metra train and I asked him what were they doing and Matthew stated: 'we looking for someone to rob['] and I stated 'good luck.'

* * *

7.    Shortly after, Brenda came out the Chicago transit authority metra station and asked me where were her cigarettes and I stated right here and gave her the one I had lit already.

8.    After I gave her her cigarettes and the one that was lit we started to walk north down 63rd & Halsted once we reached the corner of 63rd we turned east towards Kennedy-King college parking lot which is located on 63rd & Union where we was going to wait for her ride.

9.     After 15 or 20 minutes of waiting Brenda's ride arrived and I asked her for a cigarette she gave me one and I said thank you and she told me don't be getting into no trouble out here and I said 'Ok' and headed north down 63rd & Union toward 62nd.

10.     Several minutes later after I left Brenda I was walking down 6[illegible]nd & Union when I observed Matthew Barnes walking down 6[illegible]nd place, he asked where I was about to go and when I was about to answer the question Matthew Barnes saw the police and fled and the police got out and pursued him on foot and the other police officer got out and handcuffed me and we drove around to the alley where they had Matthew Barnes on the floor, in handcuffs, and they arrested us. Officer Blackman and Johnson.

11.     After I was arrested I asked Brenda Green if she would come in and be a witness for me and she stated 'yes' but my public defense counsel failed to call her when we was in trial and I asked Matthew Barnes if he could do the same but he said no because he did not want to say something that could get used against him.

12.     I state that I did not participate with Matthew Barnes, Eric, and Peanut in robbing Steven Tigner nor did I have any knowledge that they was going to rob Steven Tigner."

¶ 11    On December 13, 2016, defendant's postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) stating she had examined defendant's *pro se* postconviction petition and it adequately presents his claims of deprivation of his constitutional rights and that

counsel had concluded that it was unnecessary to make any amendments for an adequate presentation of defendant's postconviction contentions. On June 27, 2017, the State filed a motion to dismiss defendant's *pro se* postconviction petition. The State's motion to dismiss defendant's *pro se* postconviction petition argued, in pertinent part, that defendant

> "provides no affidavits from any witness let alone a 'material witness' as required by the 'Act.' In fact, the only witness mentioned by the defendant *** is a friend of his named Brenda Green and there is no allegation that she was even at the scene at the time of the crime. Again, the defendant provides no support for that allegation against counsel. Not only is there no contact information available for these witnesses but if the defendant now wants to present their potential testimony he is required by the 'Act' to present their affidavits and the failure to do so is fatal to the claim. *** Here, there are no affidavits from anyone mentioned in [defendant's] affidavits nor are there any affidavits from the alleged 'material' witnesses mentioned by the defendant in his *pro se* petition."

The State concluded that "[b]ecause the defendant has failed to allege with the required specificity and support his allegations with any probative documentation his petition is subject to the State's motion to dismiss." The State's motion to dismiss also argued that defendant's trial counsel was not ineffective in deciding not to object to the Rule 431(b) admonishments and regardless "the allegation is *res judicata*, lacks the required specificity, is contradicted by the record and is, otherwise, without merit." Finally, the State's motion to dismiss argued "[e]ach and every one of [defendant's] issues [in his postconviction petition] was available to litigate on appeal and due to the defendant's failure to raise them on direct appeal he is forever foreclosed from presenting these issues in this post-conviction petition."

¶ 12    At the hearing on defendant's petition his postconviction attorney informed the trial court that she discussed the petition with defendant and that she "did not see anything for me to amend, or add, or add any additional affidavits." On December 7, 2017, the trial court granted the State's motion to dismiss defendant's *pro se* postconviction petition. In its oral ruling the trial court stated, in part, "I don't believe that the matters set forth by [defendant] and on his behalf constitute any constitutional violation cognizable under the act (*sic*) for a variety of reasons as set forth in the State's motion, including the fact that they were waived. They are not supported by affidavit. *** Similarly, his *** claim that Rule 431(b) *** was violated during jury selection is similarly devoid of merit and is waived by virtue of its failure to be raised on direct appeal. ***." The trial court did not specifically discuss defendant's claim his trial attorney failed to call Brenda Green as a witness.

¶ 13    This appeal followed.

¶ 14                                        ANALYSIS

¶ 15    On appeal from the second-stage dismissal of his *pro se* postconviction petition defendant argues postconviction counsel "provided an unreasonable level of assistance when counsel neither amended [defendant's] petition to include required affidavits nor filed a motion to withdraw, and counsel permitted the [trial] court to misconstrue a valid claim as waived." We agree with defendant that postconviction counsel failed to provide the level of assistance required by the Act with regard to the failure to amend defendant's *pro se* petition and/or to include certain affidavits. For the following reasons we reverse the trial court's judgment granting the State's motion to dismiss and remand for further proceedings with new appointed counsel.

¶ 16    The Act provides a three-stage process to adjudicate allegations of substantial deprivations of constitutional rights at a defendant's trial or sentencing which were not or could not have been raised on direct appeal of a conviction. *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Parada*, 2020 IL App (1st) 161987, ¶ 15; *People v. Shaw*, 2019 IL App (1st) 152994, ¶ 18.  At the first stage of postconviction proceedings the trial court reviews the petition to determine whether it is frivolous or patently without merit, a standard that is defined to mean the petition "has no arguable basis either in law or in fact and relies on indisputably meritless legal theories or fanciful factual allegation[s].  [Citation.]  A legal theory is meritless if it is completely contradicted by the record, while a fanciful factual allegation is fantastic or delusional." *People v. Wesley*, 2019 IL App (1st) 170442, ¶ 17; *Shaw*, 2019 IL App (1st) 152994, ¶ 18.  If the petition survives the first stage, at the second stage the State may file a motion to dismiss the petition. *People v. Hodges*, 234 Ill. 2d 1, 10-11 (2009).  Also "[a]t the second stage, the circuit court appoints counsel to represent the defendant and, if necessary, to file an amended petition." *People v. Jackson*, 2018 IL App (1st) 171773, ¶ 63, citing *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

> "The instant case involves the second stage of postconviction proceedings, during which the dismissal of a petition is warranted only when the allegations in the petition, liberally construed in light of the original trial record, fail to make a substantial showing of a constitutional violation.  [Citation.]  At this stage, 'all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true.'  [Citation.]  The defendant 'bears the burden of making a substantial showing of a constitutional violation.'  [Citation.]  We review *de novo*

the trial court's dismissal of defendant's postconviction petition without an evidentiary hearing. [Citation.]" *Shaw*, 2019 IL App (1st) 152994, ¶ 19.

¶ 17     Before getting to the merits of the petition, however, we must address appointed counsel's representation of defendant and the challenge to her compliance with Illinois Supreme Court Rule 651. This is so because "it is error to dismiss a postconviction petition on the pleadings where there has been inadequate representation by counsel." *People v. Suarez*, 224 Ill. 2d 37, 47 (2007).

> "There is no constitutional right to the assistance of counsel in postconviction proceedings; the right to counsel is wholly statutory (see 725 ILCS 5/122-4 (West 2000)), and petitioners are only entitled to the level of assistance provided for by the [Act] (725 ILCS 5/122-1 *et seq*. (West 2000)). [Citation.] The Act provides for a reasonable level of assistance. [Citation.] To ensure that postconviction petitioners receive this level of assistance, Rule 651(c) imposes specific duties on postconviction counsel. The rule provides as follows:
>
>> 'Upon the timely filing of a notice of appeal in a postconviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, *which may be made by the certificate of petitioner's attorney*, that the attorney has consulted with petitioner

either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of the proceedings at the trial, *and has made any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions*.' [Citation.]" (Emphases added.) *Suarez*, 224 Ill. 2d at 42.

¶ 18 In this case, defendant argues his appointed counsel "abdicated her duty to provide a reasonable level of assistance" because appointed counsel failed to obtain an affidavit from a potential witness named in the *pro se* petition (Brenda Green), failed to amend the petition to explain the absence, and failed to withdraw as counsel (if appointed counsel believed defendant's claims were without merit). Defendant argues his appointed postconviction counsel instead chose to stand "on an unamended, facially deficient postconviction petition without explanation." Defendant relies on the claim in his *pro se* petition that defendant's trial counsel provided "ineffective assistance *** for failing to *** call material witnesses" coupled with defendant's averments concerning his interactions with Brenda Green near and at the time of the offense, and that defendant, "[a]fter [he] was arrested *** asked Brenda Green if she would come in and be a witness for me and she stated 'yes' but my public defense counsel failed to call her when we was in trial" and that "[d]efense counsel was asked to speak with my witness. She plainly refused."

¶ 19 Relying on our supreme court's decision in *People v. Johnson*, 154 Ill. 2d 227, 247 (1993), defendant argues that appointed counsel has a duty under Rule 651(c) to attempt to obtain affidavits from potential witnesses named in the petition. In *Johnson*, our supreme court held that postconviction counsel has an obligation under Rule 651(c) to attempt to obtain

affidavits from witnesses specifically identified by name as offering support for constitutional claims made in the petition for purposes of shaping the allegations in the petition into appropriate legal form. *Id.*

¶ 20    Defendant, relying on *People v. Schlosser (Schlosser II)*, 2017 IL App (1st) 150355, ¶ 38, also argues appointed counsel's duty under Rule 651(c) includes at a minimum attempting to overcome the procedural bars that would prevent the proper presentation of a claim and that the absence of Green's affidavit presented such a procedural bar his appointed counsel had a duty to attempt to overcome. The *Schlosser II* court held that "at a minimum, the duty to adequately or properly present defendant's claims 'necessarily includes attempting to overcome procedural bars' that will otherwise defeat his claims. [Citation.] Postconviction counsel must try to meet procedural requirements in order to adequately advance defendant's claims under the Act." *Id.*, citing *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). In this case, the alleged "procedural bar" defendant claims his appointed counsel failed to attempt to overcome when she did not obtain an affidavit or explain the absence of an affidavit from Brenda Green, is the requirement that allegations in a postconviction petition must be supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2018)), and that, to provide proof of what a witness would have testified to requires an affidavit where the proposed witness is the only source of this new evidence. See *People v. Dupree*, 2018 IL 122307, ¶ 40.

¶ 21    Defendant acknowledges that appointed counsel's certificate of compliance raises a rebuttable presumption she complied with Rule 651(c). *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19 ("The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance. [Citation.] *** It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply

with the duties mandated by Rule 651(c).").  Nonetheless, defendant argues the "facial legal inadequacy of [his] ineffective assistance claims demonstrated that the petition did not 'adequately present[] [defendant's] claims of deprivation of his constitutional right;" therefore, the record "affirmatively rebuts the presumption *** that counsel fulfilled her obligations under the Rule."  Defendant asserts nothing in the record established that appointed postconviction counsel performed the requisite investigation into his claim or the identified witness.

¶ 22    The State responds defendant cannot meet his burden to establish that appointed postconviction counsel provided an unreasonable level of assistance or to overcome the presumption created by his appointed counsel's certificate of compliance with Rule 651(c) because the record reveals that counsel's performance was sufficient and refutes defendant's claims.  The State argues that defendant's claims were adequately set forth in his *pro se* petition because "the Act permits a petitioner to make a substantial showing of a constitutional deprivation using any suitable evidence and does not limit a petitioner solely to the use of affidavits."  *Dupree*, 2018 IL 122307, ¶ 32.  The State asserts that in this case defendant's *pro se* petition "set out his alleged constitutional deprivations" and the affidavits defendant did attach to the petition "detailed the allegations made in his petition, adequately presenting the claims to the court."

¶ 23    The State also argues the trial court did not need Green's affidavit where the existing affidavits and record evidence permits a decision on the efficacy of defendant's constitutional claims.  The State argues the efficacy of those claims could be determined from defendant's affidavits and the record because, according to the State, "even if Ms. Green had testified to all the things that defendant claims in his affidavit, his conviction could still be sustained as the other evidence against him was sufficient."  Specifically, the State notes that defendant averred

he and Green parted company several minutes before police detained defendant and she would be unable to testify to defendant's conduct after they parted. Thus, presumably, her testimony was not potentially exculpatory. The State argues defendant's *pro se* petition is not facially deficient as defendant claims because our supreme court held in *Dupree* that "when a defendant raises a claim of ineffective assistance of counsel in a postconviction petition based on counsel's failure to investigate or call a witness to testify, the petition may properly be dismissed at the second stage—*whether an affidavit is attached or not*—if the evidence presented in support of the claim does not make a substantial showing that counsel was ineffective." (Emphasis added.) *Id.* ¶ 40.

¶ 24 The State is correct in its assertion that an affidavit is not required where other evidence is sufficient to make a substantial showing of a constitutional violation including claims of ineffective assistance of counsel based on an alleged failure to discover and introduce new witness testimony. See *id.* In *Dupree*, the appellate court "ruled, as a matter of law, that [the] defendant's petition was not in conformance with the requirements of section 122-2 of the Act because defendant did not attach to his postconviction petition an affidavit from the proposed witness (Morrison) and the lack of an affidavit was fatal to his claim of ineffective assistance of counsel." *Id.* ¶ 30. Our supreme court disagreed, holding that,

> "[i]n none of the cases cited by the State did this court create a bright-line rule or
> refuse to consider whether a postconviction petitioner had made a substantial
> showing of ineffective assistance of counsel simply because no affidavit from the
> proposed witness was attached to the petition." *Id.* ¶ 34.

Rather, "[w]here proof other than an affidavit was offered to show what the proposed witness would have testified, we considered that evidence and determined it was insufficient to make a

substantial showing of ineffective assistance." *Id*. The *Dupree* court found that the "real problem" with the appellate court's decision was that it misconstrued the defendant's ineffectiveness claim. *Id*. ¶ 33. In *Dupree*, "unlike the typical case, [the] defendant did not hope to introduce new evidence that could only be verified by an affidavit from the proposed witness. Instead, [the] defendant wanted to introduce evidence that already existed." *Id*. ¶ 42. That evidence was the missing witnesses' existing statement to police, his failure to identify the defendant, and his identification of someone else. *Id*. Under those "circumstances, anything that [the witness] might say *** [was] irrelevant to [the] defendant's claim. Consequently, under the facts [of *Dupree*,] an affidavit *** was not necessary, and it was appropriate for [the] defendant to support the allegation of ineffectiveness with portions of the record and exhibits." *Id*.

¶ 25    Nonetheless, our supreme court stated clearly that "[i]n cases where a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to call a witness, an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary 'substantial showing' to support a claim of ineffective assistance." *Dupree*, 2018 IL 122307, ¶ 34. "[I]n most cases where this type of claim is raised, without an affidavit, there can be no way to assess whether the proposed witness could have provided evidence that would have been helpful to the defense." *Id.* The defendant's own affidavit setting forth what the potential witness would have testified to is not sufficient to make a substantial showing of ineffective assistance of counsel where the affidavit and record fail to establish whether or not "the proposed witnesses could have provided any information or testimony favorable to [the] defendant" or the record does not contain "evidence that the exculpatory evidence actually exists." See *id*. ¶ 37, citing *People v. Guest*, 166 Ill. 2d 381, 401-02 (1995). Regardless of a defendant's averment that a witness "could have provided helpful

- 17 -

alibi testimony" (*id*. ¶ 36, citing *People v. Thompkins*, 161 Ill. 2d 148, 163 (1994)), review of a claim of ineffective assistance is precluded by the absence of anything in the record to support the defendant's assertion that if called at trial the witness would have provided exculpatory testimony. See *id*. ("without affidavits *** it was impossible to determine whether the failure to call these proposed witnesses was evidence of ineffective assistance"), citing *Thompkins*, 161 Ill. 2d at 163.

¶ 26    Thus, our supreme court subsequently held unequivocally that,

> "[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness. [Citation.] In the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant." *People v. Enis*, 194 Ill. 2d 361, 380 (2000), citing *People v. Johnson*, 183 Ill. 2d 176, 192 (1998); *Thompkin*s, 161 Ill. 2d at 163.

Then, the *Dupree* court noted that where "the proposed witnesses that trial counsel allegedly failed to investigate or call to testify [are] generally the only source of th[e] new evidence, without their affidavits, there [i]s no proof that such evidence actually exist[s] or that it would have been helpful to the defense." *Dupree*, 2018 IL 122307, ¶ 40.

¶ 27    In this case, defendant asserts that Green "could account for a substantial portion of the period overlapping the robbery" and would have testified that defendant "was with her prior to the arrest, and not at a convenience store or with a group of other men robbing Tigner" raising "the substantial likelihood that the result of the trial could have been different had she testified." We agree. See generally *People v. Campbell*, 332 Ill. App. 3d 721, 737 (2002) (Knecht, J., dissenting) ("the failure to subpoena witnesses known to defense counsel who could contradict

the State's theory of the case or provide exonerating testimony constitutes ineffective assistance").

¶ 28    Green's testimony is the only source of this evidence.  Without her affidavit, there is no way to assess whether such testimony even exists.  Thus, the failure to include Green's affidavit or to explain its absence was fatal to defendant's claim of ineffective assistance.  *Id*.  See also *Thompkins*, 161 Ill. 2d at 162-63 (where the defendant averred he was with two potential witnesses during the period when other evidence showed he was with another witness who provided inculpatory testimony as to the defendant's conduct, but the defendant "failed to submit affidavits from [the witnesses] themselves," the court was "precluded from considering [the] issue further").  In this case, defendant's appointed postconviction counsel chose to stand on defendant's *pro se* unamended petition that alleged ineffective assistance of counsel based on the failure to call a witness who could have provided testimony to "counter a portion of the prosecution's case" (*Thompkins*, 161 Ill. 2d at 163) and failed to amend the petition to attach the witnesses' affidavit or to explain its absence thus precluding consideration of the issue (*id*.).  Our supreme court

> "has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit. [Citations.]  In *Jones*, this court rejected the State's argument that the circuit court properly dismissed the petition because its allegations were insufficient to raise a constitutional issue and it could not be made sufficient through amendment.  The court noted its prior holdings that it is error to dismiss a postconviction petition on

the pleadings where there has been inadequate representation by counsel."

*Suarez*, 224 Ill. 2d at 47.

¶ 29    Because of our decision on this issue we have no need to address defendant's additional claim that postconviction counsel failed to provide the required level of assistance by permitting the court to misconstrue a valid claim as waived.

¶ 30    Accordingly, for the foregoing reasons, we reverse the trial court's judgment and remand the cause with instructions for the trial court to appoint a new attorney to serve as defendant's postconviction attorney, for appointed counsel to comply with Rule 651(c), and for a new stage-two hearing.  *People v. Carizoza*, 2018 IL App (3d) 160051, ¶ 21, *People v. Rankins*, 277 Ill. App. 3d 561, 564 (1996) (where postconviction counsel failed to comply with Rule 651(c) court reversed dismissal and "remanded for a new stage two hearing where counsel shall comply with Supreme Court Rule 651(c)").

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, the circuit court of Cook County is reversed, and the cause is remanded with instructions.

¶ 33    Reversed and remanded with instructions.